CASCADIA WILDLANDS PROJECT; et al., Plaintiffs—Appellants,

v.

Scott CONROY, Rogue River–Siskiyou National Forest Supervisor; et al., Defendants—Appellees,

American Forest Resource Council; et al., Defendant–Intervenors—Appellees.

No. 05–35389.
D.C. No. CV–04–06440–MRH.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 2, 2005.

Decided Dec. 16, 2005.

Marianne G. Dugan, Facaros, Dugan, Rosas, Lauren C. Regan, Eugene, OR, for Plaintiffs–Appellants.

Lisa E. Jones, Esq., Roger R. Martella, Jr., Esq., Timothy Racicot, Esq., DOJ—U.S. Department of Justice Environment & Natural Resources Division, Washington, DC, James L. Sutherland, Esq., USEU—Office of the U.S. Attorney, Eugene, Or, for Defendants–Appellees.

Scott W. Horngren, Esq., Julie A. Weis, Esq., Haglund Kirtley Kelley Horngren & Jones, LLP, Portland, OR, for Defendant–Intervenors–Appellees.

Before: NOONAN, T.G. NELSON, and WARDLAW, Circuit Judges.

### MEMORANDUM *

Cascadia Wildlands Project, et al. (Plaintiffs), seek declaratory and injunctive relief against Defendants, Scott Conroy, Supervisor of the Rogue River–Siskiyou National Forest, et al., for alleged violations of the National Forest Management Act (NFMA), 16 U.S.C. §§ 1600–1614, the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4370(d), and the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–706. Plaintiffs challenge the Forest Service's approval of the Biscuit Fire Recovery Project ("Project") in the Rogue–Siskiyou National Forest in Oregon, and appeal the district court's decision denying their request for a preliminary injunction. We have jurisdiction pursuant to 28 U.S.C. § 1292, and we affirm.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

772

■ 1) The district court did not err in holding that Plaintiffs had not demonstrated a probability of success on their claims that Defendants violated NEPA and NFMA by failing to conduct ground-based, site-specific soil surveys. In addition to conducting aerial photography and using GIS maps, modeling tools, and monitoring reports, the Service conducted site-specific soil investigations on burned areas and also examined soil displacement and compaction. The district court did not err in finding that the methodology used by the Forest Service in the Biscuit Project was more robust than the methodology at issue in *Lands Council v. Powell*, 395 F.3d 1019 (9th Cir.2005), and satisfied NEPA and NFMA.

■ 2) Plaintiffs have not demonstrated a likelihood of success on their claims that Defendants violated NEPA by failing to consider and disclose impacts of wet-season logging and hauling on Port Orford Cedar, Tier 1 key watersheds, and fish and aquatic habitat. Defendants presented evidence that the weather was unusually dry during the winter of 2004–2005 and that operations were ceased during periods of wet weather. The FEIS explicitly permits operations outside of the dry season when the weather is unseasonably dry. The district court did not err in finding that there was little evidence that the Service or intervenors have ignored or violated wet season restrictions.

■ 3) The district court did not err in finding that Plaintiffs had not demonstrated a probability of success on their claim that Defendants violated NEPA by failing to disclose and analyze opposing scientific information regarding the effect of salvage logging upon the risk of fire in the burn area. The FEIS states that "the removal of large snags probably reduces fire severity and spread potential if new small fuels (e.g. branches and twigs) are not created

in the process," but also indicates that "no studies have documented the effect of this practice in actual fires," and that "[u]ncertainties in post-fire recovery management ... are clearly too large and diverse to support choosing a single (passive or active) approach above the other." Defendants did not fail to "disclose [or] analyze scientific opinion in support of ... the conclusion that the ... project will reduce the intensity of future wildfires in the project area." *Sierra Club v. Bosworth,* 199 F.Supp.2d 971, 981 (N.D.Cal.2002).

■ 4) The district court did not err in finding that the FEIS adequately discussed and analyzed environmental impacts upon the water quality of designated and eligible rivers. The FEIS discusses specific impacts of logging-related sediment upon wild and scenic rivers for all alternative logging plans. Although the EIS does not include a large volume of "quantified" information, it does more than provide a general overview of what impacts will occur, *Neighbors of Cuddy Mountain v. U.S. Forest Serv.,* 137 F.3d 1372, 1379 (9th Cir.1998), and it references materials in support of its conclusions, *cf. Blue Mountains Biodiversity Project v. Blackwood,* 161 F.3d 1208, 1214 (9th Cir. 1998). Plaintiffs have not raised serious questions or demonstrated a probability of success on this claim.

■ 5) The district court did not err in finding that Plaintiffs had not raised serious questions or demonstrated a probability of success on their claims that Defendants violated NEPA and NFMA by failing to ensure the maintenance of habitat and of indicator species. NFMA requires that Defendants provide habitat "to support, at least, a minimum number of reproductive individuals and that habitat must be well distributed so that those individuals can interact with others in the

planning area." The uncontroverted evidence demonstrates that woodpecker populations are expected to increase dramatically for ten to twenty years, and that thereafter the populations will decline as snags naturally fall. According to the FEIS, this decline would occur even if no logging activity took place. We have held that "[t]he Service is entitled to rely on reasonable assumptions in its environmental analyses." *Inland Empire Pub. Lands Council v. U.S. Forest Serv.*, 88 F.3d 754, 761 (9th Cir.1996). It did so in this case.

 6) The district court did not abuse its discretion in weighing the balance of the harms and the public interest. The district court did not err in finding that the degree of harm associated with harvesting dead trees may be somewhat less than the harm associated with the removal of live trees, and that the force of Plaintiffs' arguments was diminished by the paucity of evidence that wet weather log hauling is occurring. On the other side of the balance of harms is the economic loss from delaying millions of dollars of timber sales. Additionally, the FEIS indicates that the creation of fuel management zones, the removal of surface fuels, and the removal of dead snags associated with the project may reduce the risk of future catastrophic fire. This public interest must also be weighed against Plaintiffs' concerns.

"[A]n injunction is an equitable remedy that does not issue as of course." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). We conclude that the Plaintiffs have not demonstrated a probability of success on the merits of their claims that outweighs the Defendants' and the public's interest in tree removal, and that the district court

did not abuse its discretion in denying the Plaintiffs' motion for a preliminary injunction.

AFFIRMED.